**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 19-34092 |
| | ) | |
| ADETAYO ADEGOKE, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Hon. Donald R. Cassling |
| | ) | |

## 3CLOUD'S MOTION TO DISMISS AND BAR DEBTOR FROM REFILING

Michael S. Ferrell
Epstein Becker & Green, P.C.
227 W. Monroe, Suite 3250
Chicago, IL 60606
Tel. (312) 499-1480
mferrell@ebglaw.com

*-and-*

Robert D. Sweeney
Sweeney, Scharkey & Blanchard LLC
230 West Monroe Street, Suite 1500
Chicago, Illinois 60606
Tel. (312) 384-0500
rsweeney@ssbpartners.com

*Counsel for 3Cloud, LLC*

**NOW COMES** 3Cloud, LLC ("3Cloud") and files this Motion to Dismiss Debtor's Bankruptcy action and bar Debtor from refiling for unreasonable delay pursuant to 11 U.S.C. § 1307(c)(1) and due to a non-confirmable plan pursuant to 11 U.S.C. § 1325(b)(1), and states to the Court as follows:

## BACKGROUND

On December 6, 2019, Adetayo Adegoke ("Debtor") filed a Voluntary Petition for Relief under Chapter 13 of the United States Bankruptcy Code, thereby commencing the above captioned bankruptcy case. This bankruptcy action was initiated shortly after Debtor received an adverse ruling in a district court proceeding, as explained below.

A.     **The District Court Litigation**

Debtor is a former employee of 3Cloud. Shortly after resigning, Debtor was hired by Concurrency, Inc., a Microsoft partner firm and 3Cloud's competitor. Around this time, 3Cloud became aware that Debtor misappropriated property and materials belonging to 3Cloud. Among other things, Debtor's actions constituted breaches of the terms of his Employment Agreement and/or Confidential Information and Non-Solicitation Agreement with 3Cloud.

On January 4, 2018, 3Cloud filed its Complaint in the United States District Court for the Northern District of Illinois, thereby commencing *3Cloud, LLC v. Concurrency, Inc. and Adetayo Adegoke*, Case No. 1:18-CV-0076 ("District Court Litigation"). 3Cloud sought recovery of damages resulting from Debtor's actions.

Due to Debtor's lack of cooperation and noncompliance during the discovery process, 3Cloud was forced to file a motion to compel responses to discovery requests and a motion for sanctions based on Debtor's numerous discovery violations. Debtor was admonished for his actions by the magistrate who said he had never before granted sanctions on a discovery motion,

but would grant them against Debtor. 3Cloud's motions were granted as a result of "the complete inadequacy of [Debtor's] objections and responses" **and failure to participate in discovery in good faith**. See October 16, 2019, District Court Order (*3Cloud v. Adegoke*, No. 1:18-cv-00076, (N.D. Ill. Oct. 16, 2019), ECF 110 (3Cloud Trial Ex. 61)). 3Cloud subsequently submitted its fee petition on November 21, 2019, for efforts made in pursuing discovery compliance. Debtor foresaw that he faced an adverse judgment in the District Court Litigation and filed the above captioned Chapter 13 action, despite being a high wage-earner with very little debt. The District Court Litigation was and remains stayed as a result of Debtor's Chapter 13 case.

    **B.**     **The Bankruptcy Case**

On December 18, 2019, Debtor filed his proposed Chapter 13 Plan ("Original Plan"). (Dkt. No. 20). Pursuant to the terms of the Original Plan, Debtor proposed to pay his general unsecured creditors $59,217.60 over five years. These payments were to be funded by monthly plan payments of $1,096.62. (Dkt. No. 20 at 1).

3Cloud objected to the Original Plan on the basis that it was proposed in bad faith and permitted Debtor to retain substantial monthly income to the detriment of his general unsecured creditors. Specifically, 3Cloud contended that Debtor's disposable income calculation was artificially reduced by the inclusion of improper legal expenses, reimbursable tuition costs, and improper childcare costs. 3Cloud also objected on the basis that the Original Plan lacked language addressing the submission of certain post-petition income to the Chapter 13 Trustee. (Dkt. No. 25).

Confirmation of Debtor's Original Plan was set for January 29, 2020. Given Debtor's failure to provide certain information to the Chapter 13 Trustee, confirmation was reset to March 4, 2020. (Dkt. No. 27).

On February 3, 2020, Debtor filed his Amended Chapter 13 Calculation of his Disposable Income ("Amended CDI") (Dkt. No. 29), Amended Schedule J (Dkt. No. 30) and Amended Proposed Chapter 13 Plan ("Amended Plan") (Dkt. No. 31). On April 6, 2020, Debtor filed another Amended Schedule J that did not address the objections to the previous plan. (Dkt. No. 43).

On January 25, 2021, Debtor filed yet another Amended Plan ("January 25, 2021 Plan"), this time raising the value of the bankruptcy estate by almost $300,000.00 to $519,918.24. (Dkt. No. 118.) Due to the substantial increase in the bankruptcy estate, 3Cloud did not object to this version of Debtor's Plan and ultimately elected to proceed to an evidentiary hearing regarding the value of 3Cloud's claim in reliance on the fact that the estate would be $519,918.24.

Judge Schmetterer (retired) presided over the evidentiary hearing and issued a ruling in favor of 3Cloud on August 20, 2021. (Dkt. No. 189). Judge Schmetterer found that Debtor willfully violated the Illinois Trade Secrets Act and the federal Defend Trade Secrets Act, and that 3Cloud was entitled to a wide array of damages, including compensatory, statutory, and punitive damages, as well as attorneys' fees, based on Debtor's willful and deceptive conduct. This Court ordered an evidentiary hearing on 3Cloud's damages. Prior to that hearing, Debtor and 3Cloud agreed to stipulate to damages of $3,806,448.35, to 3Cloud, comprised of compensatory and punitive damages— based on the January 25, 2021 Plan that was pending confirmation. (Dkt. No. 247).

Recognizing that he stood to pay $519,918.94 into the bankruptcy estate pursuant to the January 25, 2021 Plan, Debtor sought to amend his Chapter 13 Plan yet again. Specifically, on February 8, 2022, Debtor submitted an amended plan to reduce his contributions to the estate to $158,980.90—a reduction of over $350,000.00—despite suffering no loss of income or change in circumstances. (Dkt. No. 221). In fact, Debtor's income from Microsoft has increased during the pendency of this bankruptcy, as evidenced by his W-2 Statements, with no exigent costs. Debtor,

- 3 -

however, has continued to seek reductions in his bankruptcy estate, all while never accounting for his full earnings, including the value of annual stock awards from Microsoft, nor providing an explanation of his yearly compensation package from Microsoft, which includes stock grants, options, cash bonuses, performance-based bonuses, deferred compensation, and retirement contributions.

On March 20, 2023, Debtor sought to amend his plan for the fourth time, submitting a new version of Schedule J with an amended plan that still improperly allocated and inflated expenses, failed to address 3Cloud's objections, and reduced Debtor's contributions to the estate by an additional $10,000.00. (Dkt. No. 292, 294).

On June 1, 2023, Debtor amended his plan for the fifth time ("Fifth Amended Plan"), even in the face of assertions by counsel for 3Cloud that Debtor was patently understating his monthly income and exceeding statutory limits for expenses for a high wage earner. Debtor's Fifth Amended Plan reduces Debtor's contribution to the estate by over $20,000.00 more.

While Debtor's yearly income has increased, his proposed Plan contributions to the bankruptcy estate have fluctuated as follows:

| Date: | Total Estate: | Amount for Unsecured Creditors: | Year: | Total Income:[1] |
|---|---|---|---|---|
| Dec. 18, 2019 | $ 65,797.20 | $ 59,217.60 (Dkt. No. 20) | 2019 | $367,284.00 |
| Feb. 3, 2020 | $203,401.50 | $185,064.55 (Dkt. No. 31) | | |
| Jan. 25, 2021 | $519,516.80 | $467,524.98 (Dkt. No. 118) | 2020 | $336,407.15 |
| Feb. 8, 2022 | $158,980.90 | $151,000.00 (Dkt. No. 221) | 2021 | $328.686.70 |
| Mar. 20, 2023 | $148,130.40 | $141,000.00 (Dkt. No. 294) | 2022 | $354,561.74 |
| June 1, 2023 | $126,470.40 | $119,340.00 (Dkt. No. 305) | | |

Debtor has provided no justification for the fluctuations in his bankruptcy estate between January 25, 2021, and June 1, 2023—Plaintiff's employment status did not change, nor did his

---

[1] The figure for 2019 is derived from Debtor's Form 1040, which is attached as Exhibit K (without schedules). The remaining figures are derived from Debtor's Microsoft earnings statements attached as Exhibit A.

- 4 -

salary decrease, as illustrated in the table above. Furthermore, Debtor's allocations to unsecured creditors in the January 25, 2021 Plan was a material fact that informed 3Cloud's decision to stipulate as to the value of its claim.

Much like in the District Court Litigation, Debtor has sought to prevent disclosure of information necessary and relevant to his Chapter 13 plans by obfuscating his full income and true financial picture. 3Cloud continued its efforts to undertake substantial discovery of Debtor's assets following the damages stipulation and has confirmed that Debtor was/is an extremely high wage earner, with taxable earnings approaching $400,000/year since filing his bankruptcy petition. Debtor has continued to spend substantial amounts of money during the pendency of this bankruptcy proceeding, apparently without approval of this Court or the Trustee. As such, there was no legitimate, good faith basis for Debtor's proposed reduction in his contributions.

Accordingly, on October 26, 2023, the Trustee filed a motion to dismiss Debtor's bankruptcy case pursuant to 11 U.S.C. § 1307(c)(1) due to Debtor's unreasonable delay by failure to file a confirmable plan within a reasonable period of time. 3Cloud brings this motion to join the Trustee and further moves to dismiss pursuant to 11 U.S.C. § 1325(b)(1) due to a non-confirmable plan and 11 U.S.C. § 1307(c)(1) for unreasonable delay.

## ARGUMENT

This Court should dismiss Debtor's bankruptcy case for cause because Debtor has failed to present a confirmable plan, has caused unreasonable delay, and has brought this bankruptcy in bad faith.

### A.     Debtor's Fifth Amended Plan is Not Confirmable.

Over the course of this bankruptcy—and after five amendments—Debtor has failed to present a plan that can be confirmed. Pursuant to 11 U.S.C. § 1325(b)(1), the Court may not

confirm Debtor's plan if an unsecured creditor objects to confirmation and the plan either fails to (1) pay the unsecured creditor's claim in full or (2) fails to provide for the payment of all of Debtor's disposable income to unsecured creditors over the applicable commitment period. While courts have held that only one of the options under 11 U.S.C. § 1325(b)(1) need be fulfilled for confirmation of a plan, Debtor's Fifth Amended Plan fails to satisfy either requirement. *See In re Eubanks,* No. 17-40227, 581 B.R. 583, 585 (S.D. Ill. Feb. 16, 2018) (citing *Hamilton v. Lanning,* 560 U.S. 505, 508 (2010)); *In re Johnson,* No. 10-03184C, 2011 WL 1671536, at *3 (Bankr. N.D. Iowa May 3, 2011). Additionally, as discussed further below, this bankruptcy was not pursued in good faith, which is a prerequisite for a bankruptcy plan to be confirmed. 11 U.S.C. § 1325(a)(7) ("the action of the debtor in filing the petition was in good faith.").

### 1. Debtor's Fifth Amended Plan Fails to Pay 3Cloud's Claim in Full.

Debtor's current plan, the Fifth Amended Plan, allocates only $119,340.00 to his unsecured creditors, including 3Cloud. 3Cloud's claim, as stipulated between Debtor and 3Cloud, exceeds $3.8 million dollars. Debtor's Fifth Amended Plan will clearly not pay 3Cloud's claim in full and, therefore, the plan fails to satisfy the first prong of 11 U.S.C. § 1325(b)(1).

Debtor has also improperly proposed that his Fifth Amended Plan's commitment period be less than three years. (Dkt. No. 294). Chapter 13 plans are required to have an applicable commitment period of three or not less than five years, depending on the debtor's monthly income. 11 U.S.C. § 1325(b)(4)(A). A plan can only be less than a three- or five-year term if Debtor will pay all unsecured claims in full within that shortened timeframe. 11 U.S.C. § 1325(b)(4)(B). As established above, Debtor will not be paying 3Cloud's claim in full under the Fifth Amended Plan, so it cannot be confirmed.

2. **Debtor's Fifth Amended Plan Fails to Provide for Payment of All Debtor's Disposable Income to Unsecured Creditors Over the Applicable Commitment Period.**

Debtor's Fifth Amended Plan also fails to provide for all of Debtor's disposable income to be received during the applicable commitment period to be applied towards payments to his unsecured creditors, as required under 11 U.S.C. § 1325(b)(1)(B). Indeed, Debtor has failed to even disclose all of his income. Moreover, Debtor has tried to artificially diminish his disposable income in order to avoid paying his creditors by overspending.

    a.    **Debtor Has Not Disclosed All of His Income.**

As an initial matter, Debtor has tried to avoid paying his creditors by not disclosing the entirety of his income. Debtor testified at his 341 meeting that he is entitled to receive annual bonuses, but Debtor has failed to provide information from his employer about his bonuses and expected salary. His W-2 Statements, however, show he receives hundreds of thousands of dollars annually as a base salary as a Director at Microsoft Corporation.

In Debtor's current schedule I, he states that his monthly gross income is $21,325.00, plus $4,000.00 in stock income. (Dkt. No. 223). Debtor's Earnings Statement from Microsoft shows his total income in 2022 was $354,561.74. (*See* Ex. A, Debtor's Microsoft earnings from 2019-2023, MS000013-23 at MS000019.) Thus, Debtor's monthly income for 2022 was $29,546.81, which is plainly higher than what is represented in his Fifth Amended Plan filed with this Court and which continues to increase. Debtor's Fifth Amended Plan, therefore, appears to have been proposed in bad faith based at least on the obvious misstatement of his taxable earnings (the Plan and Earnings Statement for the Debtor clearly deviate) in an attempt to retain income that should otherwise be paid to Debtor's unsecured creditors.

Debtor has actively sought to avoid disclosing all aspects of his compensation from Microsoft. When 3Cloud raised the issue about Debtor's total income not aligning between his Fifth Amended Plan and W-2s, Debtor did not revise his plan. Instead, he evaded questions about his full compensation and maintained that he was unable to disclose his full compensation information without Microsoft's consent. Debtor's assertion fails for two reasons.

First, Debtor is abundantly aware that a protective order was entered in this matter by Judge Schmetterer. (Dkt. 148). Accordingly, any information or documents produced in the bankruptcy proceedings could have been designated and protected under that order as needed.

Second, Microsoft's consent is not required for Debtor to disclose his income and benefits. Notwithstanding Debtor's attempts to keep the true extent of his income secret, 3Cloud was forced to serve Microsoft with a subpoena for *inter alia,* records of compensation, benefits, and employment materials relating to Debtor. Notably, Microsoft did not object to 3Cloud's requests on grounds of confidentiality or privilege, as one would have expected based on Debtor's representations; rather, **Microsoft objected on the basis that the documents were likely in the possession, control, or custody of Debtor and that Debtor could have produced the requested documents himself**. *See generally,* Microsoft Objections to Subpoena, dated Jan. 16, 2024, attached hereto as Ex. B. Debtor's employment agreement, also produced by Microsoft, confirmed that "'[c]onfidential or proprietary information or trade secrets' will not be interpreted to unlawfully restrict [his] right to discuss [his] wages and other terms and conditions of [his] employment […] with others." (Debtor's Microsoft Employment Agreement attached hereto as Ex. C, at MS000008-9). Thus, Debtor could have cooperated and produced the necessary income documentation to support his Chapter 13 plans all along, forcing 3Cloud to jump through multiple hoops in securing information the Debtor could and should have provided himself. The documents

that 3Cloud has (finally) received from Microsoft further support that Debtor's Fifth Amended Plan has failed to account for or contribute all of his projected disposable income to the bankruptcy estate.

> **b.   Debtor's Fifth Amended Plan Does Not Provide for All Projected Disposable Income to be Paid to Debtor's Creditors.**

Under the second prong of 11 U.S.C. § 1325(b)(1), when a creditor is not receiving full payment of its claim over the plan period, the plan may not be approved unless all of the Debtor's projected disposable income over the life of the plan is applied to payments to the creditors. *Hamilton v. Lanning,* 560 U.S. 505, 509 (2010); *see also, In re Eubanks,* 581 B.R. 583, 587 (S.D. Ill. 2018) (discussing that when creditors will be paid 100% of their claims over five years, a debtor is not required to pay all disposable income in order to pay creditors in a shorter period). Debtor's Fifth Amended Plan reveals no provisions for the submission of certain disposable income that Debtor is receiving and is virtually certain to receive during the five-year commitment period.

Generally, a debtor's disposable income is calculated by subtracting all reasonably necessary expenditures for the maintenance and support of himself and his dependents and any charitable contributions to qualified entities from his gross monthly income. For reference, Debtor's total yearly income according to earnings statements received from Microsoft as compared to what Debtor reported on his Schedule I forms, was as follows (*see* Ex. A):

| Year: | Total Income: | Monthly Income: | Debtor's Reported Monthly Income from applicable Schedule I: |
|---|---|---|---|
| 2020 | $336,407.15 | $28,033.93 | $17,500.00 (Dkt. No. 14, 12/18/2019) |
| 2021 | $328,686.70 | $27,390.56 | $17,500.00 (Dkt. No. 14, 12/18/2019) |
| 2022 | $354,561.74 | $29,546.81 | $25,325.00 (Dkt. No. 223, 2/8/2022) |
| 2023 | $377,201.49 | $31,433.46 | $25,325.00 (Dkt. No. 223, 2/8/2022) |

Debtor has not provided an explanation for the discrepancies between his income listed in his Microsoft earnings statements and his Scheduled I forms, and since filing for bankruptcy,

Debtor has only amended his Schedule I once. (Dkt. No. 223). In any event, Debtor's household gross income exceeds the highest median family income in Illinois ($101,240 in 2019 when his bankruptcy petition was filed for a family of four;[2] $132,189 in 2023 when his Fifth Amended Plan was filed for a family of five), his reasonably necessary expenditures must be calculated pursuant to 11 U.S.C § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3).

Debtor, however, demonstrates a pattern of overspending to diminish the disposable income that is available to his creditors. A review of Debtor's Fifth Amended Plan reveals expenditures that are excessive, improper, and specifically intended to reduce Debtor's disposable income for the purpose of reducing his monthly plan payments. Furthermore, 3Cloud's Rule 2004 examination has revealed that, since filing his bankruptcy petition, Debtor continues to spend wildly to diminish his available disposable income. Debtor's recent monthly spending appears to generally exceed the expenses he has identified in his plan.

In August 2023, Debtor's Chase checking account reflected $29,097.60 in electronic withdrawals with an ending balance of $418.65. (Debtor's August 2023 Chase Account Statement is attached hereto as Ex. D.) Debtor's Chase checking account statement for September 13, 2022, to October 12, 2022, shows $45,774.32 in deposits with $40,641.85 withdrawn or spent during the same one-month period. (Debtor's October 2022 Chase Account Statement is attached hereto as Ex. E.) At bottom, Debtor's Chase checking account statements reveal a pattern—no matter how much money is deposited into Debtor's checking account, he spends nearly all of it each month, with monthly expenses up to $50,000.00. Debtor appears to be intentionally spending nearly all of his income to avoid his duty to contribute all of his disposable income to his bankruptcy estate and pay creditors what they are owed.

---

[2] The family of four in 2019 is based on Debtor's report of one child, himself, his wife, and his mother, although his mother was not listed as a dependent on his December 18, 2019, Schedule J Form. (Dkt. 14).

Debtor's Fidelity accounts also present issues of inconsistency. In his Original Plan, Debtor reported among his exempt property a 401(k) account with Fidelity Investments and a corresponding exemption of $23,500.00. (Dkt. 14). However, Debtor does not list any monthly contributions to a retirement plan in the corresponding Schedule I. (Dkt. 14). Additionally, the Fidelity statements that Debtor produced do not reflect a 401(k) account; rather, they show a Microsoft Employee Stock Purchase Plan, and as of May 2023, a Health Savings Account. (Debtor's Fidelity Investment statements for 2019-2023 are attached as Exs. F-J). The Fidelity statements reveal that Debtor withdrew more than $84,000.00 from his account in 2023, more than $78,000.00 in 2022, over $150,000.00 from his account in 2021, and over $29,000.00 from his account in 2020. (See Exs. G-J). Debtor had virtually no debts besides an average student loan, a modest mortgage, and some minor credit card debt. Absent 3Cloud, Debtor could satisfy all of his debts easily. Debtor's monthly withdrawals are not accounted for in Debtor's income statements and, moreover, his Fidelity account should not qualify for an exemption or deduction from the bankruptcy estate when it is not a qualified retirement plan. *See, e.g., In re Davis,* 2017 WL 4898166, *5 (Bankr. C.D. Ill. Oct. 30, 2017) (confirming that qualified pension and retirement plan contributions can be excluded from bankruptcy estate); *see also, In re Seafort,* 437 B.R. 204, 207, 213 (B.A.P. 6th Cir. 2010). It appears that Debtor realized he would have to contribute these gains to his estate and has been steadily spending those earnings to avoid contributing the same.

Debtor has acquired new vehicles during the course of the bankruptcy proceedings and without prior approval. At the outset of the bankruptcy proceedings, Debtor owned outright both a 2013 Volkswagen Touareg and a 2008 Hyundai Veracruz, which he valued at $11,500.00 and $4,300.00, respectively. (Dkt. No. 14 at 4). Since then, Debtor has disposed of those vehicles, without providing an accounting for them, and is now leasing a 2023 Tesla and a 2021 Kia

- 11 -

Telluride, both of which he put in his wife's name but are paid for by him. (Dkt. No. 292). By doing so without approval, Debtor has impermissibly increased his monthly expenses and decreased the available monthly disposable income available to his creditors, including 3Cloud.

The Fifth Amended Plan still improperly includes tuition costs, which Debtor has not established as a necessary expense under 11 U.S.C. § 1325(b)(2)(B), and, moreover, *for which he is reimbursed by Microsoft*. (See Ex. A at MS000018 ("*tuition reimbursement non-taxable*").)

Additionally, Debtor should not be able to shield his stock award income from the calculation of his disposable income. While it is true that 11 U.S.C. § 1325(b)(1) instructs that projected disposable income is to be calculated as of the plan's effective date, courts are permitted to "go further and take into account other known or virtually certain information about the debtor's future income or expenses." *Hamilton v. Lanning*, 560 U.S. 505, 519 (2010). Here, Debtor is effectively shielding hundreds of thousands of dollars of income from inclusion in his disposable income because it is not included in his "gross pay" until vested. Once vested, he will has and will continue to have that income. Because it represents "known or virtually certain" future income, it should be included in any calculation of Debtor's disposable income. By excluding this income, Debtor is effectively shielding approximately $5,300.00 to $6,600.00 from his monthly disposable income—amounting to between $63,600.00 and $79,200.00 annually or, alternatively, between $318,000.00 and $396,000.00 over a five-year plan—that could be paid to creditors, and that he has been actively spending.[3]

Debtors should not be permitted to manipulate projected disposable income during the pendency of a bankruptcy proceeding by artificially increasing expenses, or in this case, taking on

---

[3] The difference between Debtor's monthly taxable income (which includes stock award income) and his monthly gross income (which does not include stock award income) was as follows: 2020 - $5,392.28; 2021 - $5,488.16; 2022 - $6,563.03; 2023 - $6,580.36. *See* Ex. A.

new creditors to lessen disposable income. *See e.g., In re Quigley*, 673 F.3d 269, 274 (4th Cir. 2012) (discussing that failing to account for a change that would increase disposable income and deny payments to creditors that Debtor could clearly make would lead to a senseless result). As outlined above, Debtor is attempting to do this by increasing his monthly expenses before his plan is confirmed. Debtor's attempt to cheat his creditors by failing to accurately disclose his income and intentionally overspending cannot be tolerated. Debtor's Fifth Amended Plan fails to meet the requirements of 11 U.S.C. § 1325(b)(1) and this bankruptcy should be dismissed.

### B. Debtor Has Unreasonably Delayed.

Pursuant to 11 U.S.C. § 1307(c)(1), a Chapter 13 bankruptcy action should be dismissed for cause in cases of unreasonable delay. Bankruptcy courts have found unreasonable delay where: (1) the debtor's petition was purposely brought to benefit from an automatic stay; (2) the debtor failed to submit a confirmable plan; (3) the debtor made minimal plan payments during the pendency of bankruptcy; and (4) the debtor failed to make a reasonable effort to comply with the Bankruptcy Code and rules. *See e.g.*, *In re Vongermeten,* 2021 WL 1396558 (Bankr. E.D. Wis.); *In re Franklin*, 476 B.R. 545 (Bankr. N.D. Ill. 2012), *In re Rusher*, 283 B.R. 544 (Bankr. W.D. Mo. 2002); *In re Severance*, 241 B.R. 727 (D. Colo. 1998).

Dismissal is warranted here. Debtor was strongly admonished and sanctioned in the District Court Litigation for his dilatory actions. Once 3Cloud filed its fee petition in that matter, Debtor filed his bankruptcy petition a mere <u>fifteen</u> days later, despite having minimal debt, being a high wage earner, and having substantially more income than liabilities. Since filing his petition in 2019, Debtor has submitted a total of <u>six</u> Chapter 13 plans but failed to confirm any of them. This alone should be enough to find unreasonable delay. *See e.g., In re Stevenson*, 583 B.R. 573, 582 (B.A.P. 1st Cir. 2018) (filing six plans and failing to confirm any within one-year, combined with

- 13 -

the debtor's purpose of seeking to pay off other debts, was ample support for a finding of unreasonable delay and cause for dismissal). Here, Debtor has gone further: misrepresenting his assets, earnings, and expenses, and intentionally spending more than is envisioned by his own stated expenses in order to diminish the bankruptcy estate. Debtor's improper antics have caused unreasonable delay, and this Court should dismiss this bankruptcy proceeding.

### C. Debtor Has Pursued This Bankruptcy in Bad Faith.

Under § 1307(c), this bankruptcy should also be dismissed "for cause" because it has been pursued in bad faith. If a Chapter 13 case is pursued in bad faith, the matter may be dismissed, terminated, or converted to another Chapter of the bankruptcy code. *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992); 11 U.S.C. § 1307(c). Additionally, in reviewing the totality of the circumstances, courts consider the following "non-exhaustive" list of factors in determining whether a Chapter 13 case was pursued in good faith: the nature of the debt; the timing of the petition; how the debt arose; the debtor's motive in pursuing bankruptcy; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after filing for bankruptcy; and "whether the debtor has been forthcoming with the bankruptcy court and the creditors." *In re Love*, 957 F.2d at 1357. A Debtor's pre-petition conduct can also be considered as relevant to a Debtor's motives for filing a Chapter 13 petition. *In re Stoller*, 351 B.R. 605, 622 (N.D. Ill. 2006), citing *In re Love,* 957 F.2d. at 1359. A comparison of the facts outlined above and these factors in leads to one conclusion—Debtor did not file his bankruptcy case in good faith and, thus, it must be dismissed.

As outlined above, Debtor and 3Cloud were engaged in the District Court Litigation prior to this bankruptcy case. After Debtor was sanctioned by the district court for problematic behavior, 3Cloud filed its related fee petition in that matter. Fifteen days later, Debtor filed his bankruptcy

petition. At the time when he filed his Original Plan, Debtor had only $33,111.00 in consumer debt (excluding his student loans, legal costs, and mortgage) and reported over $365,000.00 in gross yearly income on his 2019 tax return. (Dkt. 14 at 12-14). There is no evidence that Debtor was struggling to pay his creditors or missing any payments such that pursuing bankruptcy was the next logical step. Rather, Debtor's motive in filing bankruptcy was to benefit from the automatic stay of the District Court Litigation and avoid his anticipated liability to 3Cloud. This shows that the bankruptcy petition was filed in bad faith. *See e.g., In re Leavitt,* 171 F.3d 1219, 1225-26 (9th Cir. 1999) (affirming dismissal for bad faith based in part on the timing of a bankruptcy filing within two weeks of an adverse court judgment, which supported that avoidance of the judgment was the debtor's motive); *In re Virden*, 279 B.R. 401, 410 (Bankr. D. Mass. 2002) (good faith not shown where debtor's motive for filing was to avoid payment to creditor rather than due to an inability meet liabilities).

Further, Debtor has not been forthcoming with this Court or his creditors regarding his income and expenses. As described above, Debtor continues to intentionally overspend to diminish the projected disposable income that would be available to pay his creditors and has failed to disclose complete and accurate information regarding his income and expenses. *See In re McNichols,* 249 B.R. 160, 181 (Bankr. N.D. Ill. 2000) (it is the debtor's burden to prove that a plan was filed in good faith). Such actions have negatively impacted his creditors as they will recover less due to his refusal to cooperate and his rank overspending. Debtor has pursued this bankruptcy action in bad faith, and this Court should dismiss it with prejudice pursuant to 11 U.S.C. § 349 and 11 U.S.C. § 105(a) to prevent an abuse of the bankruptcy process.

**WHEREFORE**, for the foregoing reasons, 3Cloud respectfully requests that this Court dismiss Debtor's bankruptcy petition and bar him from refiling and grant such other relief that the Court deems necessary and proper.

Dated: March 29, 2024

Respectfully submitted,

**3CLOUD, LLC**

By: s/ Michael S. Ferrell
Michael S. Ferrell
Epstein Becker & Green, P.C.
227 W. Monroe, Suite 3250
Chicago, IL 60606
Tel. (312) 499-1480
mferrell@ebglaw.com

*-and-*

Robert D. Sweeney
Sweeney, Scharkey & Blanchard LLC
230 West Monroe Street, Suite 1500
Chicago, Illinois 60606
Tel. (312) 384-0500
rsweeney@ssbpartners.com

*Counsel for 3Cloud, LLC*

**CERTIFICATE OF SERVICE**

I, Michael S. Ferrell, the undersigned attorney, hereby certify that on March 29, 2024, I served the foregoing on all counsel of record via the ECF/CM system.

Dated: March 29, 2024                           s/ Michael S. Ferrell

- 17 -