1   IN THE UNITED STATES BANKRUPTCY COURT
    FOR THE NORTHERN DISTRICT OF ILLINOIS
2             EASTERN DIVISION

3

4

5  ADETAYO ADEGOKE,              )  19 B 34092
                                  )
6                                 )  Chicago, Illinois
                                  )  April 4, 2024
7             Debtor.             )  10:00 a.m.

8

9

10

11    TRANSCRIPT OF ZOOM VIDEOCONFERENCE PROCEEDINGS
        BEFORE THE HONORABLE DONALD R. CASSLING
12

13

14
    APPEARANCES:
15

16
   For the Debtor:       Mr. David P. Lloyd;
17
   For 3Cloud, LLC:      Ms. Nicole DiOrio;
18
   For the Ch. 13
19 Trustee:              Mr. Ben Kahn.

20

21

22

23
   Court Reporter:    MARY C. KELLY, CSR
24                    United States Courthouse
                      219 South Dearborn Street
25                    Room 661
                      Chicago, Illinois  60604

1              THE CLERK:  Lines 195 through 198,
2    Adetayo Adegoke.
3              MR. LLOYD:  Good morning, Your Honor.
4    David Lloyd on behalf of the debtor.
5              THE COURT:  Good morning.
6              MS. DI ORIO:  Good morning, Your Honor.
7    Nicole DiOrio on behalf of creditor 3Cloud.
8              THE COURT:  Okay.  Good morning.
9              This is another one I want to -- I do
10   want to hear from both of you, but I kind of wanted
11   to go through some of the issues that I've observed
12   over the last week and some observations, and then
13   I want to hear from you.
14             Let me just preface by the general
15   observation that in all cases in front of me, the
16   only thing I ever see is what is in court, and I'm
17   aware that there are always things going on outside
18   my purview, but that -- but just in a general
19   sense.  All I know is what is appearing here.  I
20   can look up dockets if somebody gives me reason to
21   do that.  I typically don't do that unless and
22   until I've been given some reason why that is
23   necessary.
24             But in any event, the debtor filed this
25   Chapter 13 case on December 6, 2019.  The debtor is

1    a former employee of the creditor 3Cloud.  The
2    debtor was hired by Concurrency, Inc., which is a
3    Microsoft partner, a competitor of 3Cloud; and on
4    January 4, 2018, 3Cloud filed a complaint in the
5    district court against the debtor for damages for
6    misappropriation of intellectual property and other
7    property and material belonging to 3Cloud and for
8    breach of his employment agreement and his
9    confidentiality agreement with 3Cloud.
10             From my review of the docket and --
11   because I looked at that in connection with a
12   motion to dismiss that 3Cloud filed which raised a
13   number of issues that I hadn't been aware of.
14             So I went back, and I looked at the
15   docket.  The debtor was alleged to have engaged in
16   a number of discovery violations in the district
17   court lawsuit, and the judge in that case
18   sanctioned the debtor for those discovery
19   violations.
20             3Cloud did submit a fee petition for its
21   pursuit of discovery compliance, but the debtor
22   filed this case before the district court had ruled
23   on the fee petition or was able to render a
24   judgment in the district court case.  So that
25   litigation remained stayed in the district court as

1  a result of this bankruptcy filing.
2           In this bankruptcy filing, the debtor
3  filed its original plan on December 18, 2019, and
4  two subsequent plans.  Judge Schmetterer was the
5  judge assigned to the case at the time.  He held a
6  trial and issued a ruling regarding the value of
7  3Cloud's claim.
8           Judge Schmetterer found that the debtor
9  had willfully violated the Illinois Trade Secrets
10 Act and the Defend Trade Secrets Act.  The court
11 Judge Schmetterer then ordered an evidentiary
12 hearing on 3Cloud's damages, but he didn't need to
13 hold that hearing because the debtor and 3Cloud
14 agreed to stipulate to damages of $4,806,448.35.
15          Subsequently, on February 8, 2022,
16 debtor filed another amended plan.  On March 20,
17 2023, debtor amended his plan for a fourth time.
18 On June 1, 2023, a little over a month or two
19 months from now from -- well, not -- from the one
20 year anniversary of when the plan was filed, the
21 debtor amended the plan for a fifth and, thus far,
22 final time.  This iteration of the debtor's plan
23 reduced the debtor's contribution to the estate by
24 approximately $20,000.  I then inherited this case
25 under that -- with that factual schedule from Judge

1   Schmetterer in June 2021 after he retired.
2              Since that time, the parties have been
3   engaging in discovery and have agreed periodically
4   to continue confirmation, and that's mostly what
5   was -- has been presented to me and is what is
6   involved in the case.  The discovery has involved
7   the debtor's salary and bonuses from Microsoft and
8   from Concurrency.
9              In October of 2023, the Chapter 13
10  trustee brought a motion to dismiss for failure to
11  file a confirmable plan within a reasonable period
12  of time.  That motion has been continued along with
13  the confirmation hearing while all the parties were
14  engaged in discovery regarding the debtor's income
15  with Microsoft.
16             Now, over that time, debtor, through his
17  counsel, has told the court that the discovery
18  about his client's salary and bonuses was
19  confidential and privileged and couldn't be
20  obtained without the consent of Microsoft.
21             At my urging, 3Cloud subpoenaed
22  Microsoft in January of 2024; but as alleged in the
23  current motion, Microsoft told 3Cloud that the
24  documents that it sought from Microsoft were likely
25  in the debtor's possession, custody and control and

1  that Microsoft had no problem with that information
2  being shared with 3Cloud.
3          That brings me to where I am today.
4  I've got two motions.  I have got a motion to
5  dismiss by the trustee, and I have got a motion to
6  dismiss with a 180-day bar filed by 3Cloud.
7          Frankly, I think we've reached the end
8  of the rope here, and it's become apparent from my
9  most recent review that I was looking at the case
10 too narrowly to think this was just about discovery
11 issues with Microsoft.
12         The case was filed in December of 2019.
13 It's now April 2024.  Debtor has still not
14 confirmed a plan.  Debtor has filed a total of six
15 Chapter 13 plans in this case.  He hasn't been able
16 to confirm any of them.  My view is that does
17 constitute unreasonable delay by the debtor.  See
18 *In re Stevenson*, 583 B.R. 573 at 582, which is a
19 B.A.P. decision out of the First Circuit 2018.
20         Because the trustee's motion to dismiss
21 the case has been pending since October 2023, it
22 strikes me that it's more appropriate for me --
23 that's the earlier motion, and it's more efficient
24 to deal with that since the proof for that is, I
25 think, clear on the docket and hasn't been refuted,

1  whereas the motion to dismiss by 3Cloud might
2  involve additional briefing and evidentiary
3  hearings.
4           Okay.  That sets the table.  I want to
5  hear from both of you, but, Mr. Lloyd, I've got to
6  start out -- I'm going to start out with you
7  because -- and you've been telling me that this is
8  simply a discovery dispute, and we can't -- your
9  client can't give us the documents about salary and
10 bonuses because of Microsoft's objections.  And I'm
11 not saying that what 3Cloud has said in their
12 motion is correct because I haven't had a hearing,
13 but it certainly made me concerned.  Maybe you can
14 address that and the other points about failure to
15 confirm a plan within a very lengthy period of
16 time.
17          MR. LLOYD:  Sure.
18          Regarding the Microsoft pay documents,
19 there is a confidentiality agreement, and it covers
20 compensation matters.  The debtor more than anyone
21 else that I know is probably very concerned about
22 breaching confidentiality agreements because that's
23 why he's here.
24          Microsoft did, pursuant to subpoena,
25 turn over the compensation agreements, the

1  compensation policies, all the compensation
2  information that the parties need, and I was ready
3  to report this morning I've gotten them. I've
4  gotten them from either Microsoft or creditor's
5  counsel. I've reviewed them. I understand them.
6  And they make sense, and I'm able to explain it to
7  anyone who wants to know.
8         So we've made tremendous progress just
9  in the past month getting those documents from
10 Microsoft.
11         THE COURT: Okay. But let me make an
12 additional observation which I didn't before, and
13 I'm not going to get into any of the details.
14         But my -- I've had my staff take a look
15 at the documents filed under seal that show
16 defendant's income and bonuses. I'm not going to
17 say anything more other than he's obviously very
18 well compensated and has a lot of disposable
19 income. He also has a lot of expenses on a lot of
20 different things, and I won't say anything more
21 about it than that.
22         But given the history of what has gone
23 on in the district court and what went on before
24 Judge Schmetterer, I have to tell you I am left
25 with a pretty firm conviction that this doesn't

1   constitute a valid use of the bankruptcy process
2   given the debtor's income.  And, again, I -- I am
3   loathe to grant further extensions.  Because to the
4   extent I've been operating, perhaps my fault, under
5   misapprehensions about the underlying factual
6   issues that happened before Judge Schmetterer and
7   before the district court, I wish that I had either
8   made myself aware of those earlier or been made
9   aware because that would have made a difference I
10  think in how I handled this going forward.  But I
11  honestly think enough is enough at this point.
12          Let me hear from -- I want to hear from
13  3Cloud, and, then, of course, I want to hear from
14  Mr. Kahn.  It's his motion that I've been talking
15  about.
16          Let me hear from 3Cloud.
17          MR. LLOYD:  May I make --
18          THE COURT:  Of course.
19          MR. LLOYD:  -- one more effort?
20          THE COURT:  Of course.
21          MR. LLOYD:  Of course the district court
22  litigation happened long before the bankruptcy
23  court was involved.
24          THE COURT:  Right.
25          MR. LLOYD:  And we had I don't think

1  anymore than the usual discovery issues in the
2  adversary.
3         The trial was lengthy, and it was very
4  late in Judge Schmetterer's career that the
5  judgment was entered.  And then we agreed --
6  because Judge Schmetterer left the issue of damages
7  open, we agreed on a damage award.
8         THE COURT:  Yes.
9         MR. LLOYD:  And that saved a lot of
10 energy.
11        THE COURT:  I agree.
12        MR. LLOYD:  And I don't think the debtor
13 has been acting in bad faith.  We've -- before the
14 Microsoft documents were required, we did turn over
15 all pay stubs, all tax returns, everything that the
16 debtor had.
17        Microsoft is a very, very large
18 corporation, and they take their confidentiality
19 agreements very seriously.  And I don't remember
20 now.  It was my impression that Mr. Adegoke had
21 talked to somebody at the company and asked what
22 can be done.  I don't want to say that as a fact.
23 But the compensation agreements have now been filed
24 under seal, so I think everybody recognizes that
25 they're very confidential.

1                But as I say, once we got them, it was
2   only this past month, I think both sides and I see
3   your court staff has gone through them, and I made
4   some conclusions about those.
5                I talked with my client the other day,
6   and we decided that when -- he's in the process of
7   getting his 2023 tax returns.  When we get those,
8   if we can present those to counsel and to the
9   court, that will answer what the debtor made in
10  2023, and I think it's the best answer,
11  supplemented by what Microsoft has provided, as to
12  what his compensation actually is.  And if it's
13  substantially more than what we have scheduled and
14  what he was earning before, then I agree that we
15  have a real serious confirmation issue.
16               THE COURT:  Well --
17               MR. LLOYD:  But I don't think the debtor
18  has been acting in bad faith, and all continuances
19  have been agreed by the parties.  Some have been
20  requested by the creditor.
21               THE COURT:  I understand that.  And I
22  raise the observation because the bad faith is not
23  the basis of Trustee Hooper's motion.  It's failure
24  to confirm a plan with a reasonable -- confirmable
25  plan within a reasonable period of time.

1        I'm raising -- and you've addressed the
2   income issues. That doesn't address the expense
3   issues. He also has got very, very high expenses
4   for somebody in bankruptcy. And I have not made
5   any decisions about -- because I haven't been asked
6   to -- about whether that constitutes bad faith or
7   not.
8        But at any rate, let me hear next from
9   3Cloud.
10       MS. DI ORIO: Your Honor, I mean, as you
11  hit on the head, there have been a number of issues
12  with Mr. Adegoke's income disclosures. And while
13  we have had his W-2s and his Chase and other
14  information, I would agree with you that the
15  compensation information could have been obtained
16  by him without us having to go to Microsoft.
17       Setting that aside, I think 3Cloud would
18  be in agreement with Your Honor's decision to
19  dismiss this case based on Mr. Kahn's motion. Our
20  primary concern would be whether debtor would then
21  be inclined to refile. And I know you're able to
22  set limits on when he can refile, but based off of
23  what we set out in our motion, we would be
24  concerned that he would attempt to refile to again
25  avoid litigation.

1          THE COURT:  Well, there are -- he has
2    the right to refile if he wants to.  There are
3    consequences to that dealing with the automatic
4    stay and various other issues.
5          But at any rate, I still think it makes
6    more sense from a judicial efficiency point of view
7    and a fairness point of view, quite frankly, to
8    make a ruling based on Trustee Hooper's motion
9    rather than 3Cloud's.
10          But, Mr. Kahn, you've been sitting here
11    very patiently.  What's your -- tell me your
12    position.
13          MR. KAHN:  I think I -- as Your Honor
14    indicated, I think, you know, enough is enough.
15    The debtor has had a very, very long time to
16    cooperate.
17          I don't think this is a debtor that
18    ought to be in Chapter 13 anyway.  I don't think
19    that Congress when they formulated Chapter 13,
20    contemplated a debtor like this with this kind of
21    income and expenses.
22          But, also, the debtor has demonstrated
23    in state court and in this court, you know, failure
24    to, you know, comply with discovery.  His income
25    now is still not known after four years.  He

1    certainly knows what he earned and could have
2    provided that earlier, I believe.  I think that --
3    I think that as Your Honor said, I think enough is
4    enough.  I think the case should be dismissed.
5             THE COURT:  Mr. Lloyd, I'll give you the
6    last word.
7             MR. LLOYD:  I've run out of arguments.
8    I can see where the court is going with this.  I
9    was ready to say just give us a few more weeks.  If
10   we can't agree on an agreed payment to Mr. Kahn,
11   then set a hearing on income and expenses.  The
12   income we now know.
13            I understand -- the creditor has never
14   to my mind raised the expenses as a particular
15   issue in their objection.  It's always been
16   concentrated on income.
17            THE COURT:  Okay.
18            I am going to grant the trustee's motion
19   to dismiss.  And, you know, we'll see what debtor
20   wants to do, what 3Cloud wants to do in state court
21   or federal district court or wherever you're
22   proceeding.  I assume it's federal district court
23   at this point.  And we'll go from there.
24            I am going to grant effective today the
25   trustee's motion for the reasons I've stated in

1   open court today.
2           MS. DI ORIO:  Your Honor, one small
3   procedural issue.  We also brought a motion as you
4   saw to file the exhibits under seal.  We just ask
5   that that be granted so that they're under seal.
6           THE COURT:  I have no problem with that.
7   Those are under seal.
8           MS. DI ORIO:  Great.  Thank you, Your
9   Honor.
10          MR. LLOYD:  Thank you, Your Honor.
11          THE COURT:  You bet.
12          THE CLERK:  Judge, and does that moot
13  3Cloud's motion to dismiss?
14          THE COURT:  Say that again, Shanda?
15          THE CLERK:  Does that moot 3Cloud's
16  motion to dismiss at --
17          THE COURT:  Yes, it does.
18          THE CLERK:  -- Docket 348?
19          THE COURT:  Yes.
20          THE CLERK:  Thank you.
21              (Which were all the proceedings had
22               in the above-entitled cause,
23               April 4, 2024, 10:00 a.m.)
24  I, MARY C. KELLY, CSR, DO HEREBY CERTIFY THAT THE
    FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF
25  PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE./S/
    (f)